Thomas E Lauria
State Bar No. 11998025
Craig H. Averch
State Bar No. 01451020
**WHITE & CASE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, California 90071
Telephone:   (213) 620-7704

Henry W. Simon, Jr.
State Bar No. 18394000
Robert A. Simon
State Bar No. 18390000
**BARLOW GARSEK & SIMON, LLP**
3815 Lisbon Street
Fort Worth, Texas 76107
Telephone:   (817) 731-4500

Mary Kay Braza
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone:   (414) 271-2400

Michael J. Small
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, Illinois  60610
Telephone:   (312) 832-5832

**ATTORNEYS FOR RANGERS
BASEBALL EXPRESS, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| TEXAS RANGERS BASEBALL PARTNERS, | ) ) ) | Case No. 10-43400 (DML) |
| | ) | |
| Debtor. | ) | |
| | ) ) | |

| | |
|---|---|
| RANGERS BASEBALL EXPRESS LLC  ) | Adversary Case No. 10-<u>04121-</u>dml |
| ) | |
| Plaintiff,  ) | |
| ) | Hearing Date and Time: To Be Set |
| -against-  ) | |
| ) | |
| TEXAS RANGERS BASEBALL  ) | |
| PARTNERS  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

**EMERGENCY MOTION OF RANGERS BASEBALL EXPRESS LLC FOR
A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER
(i) PROHIBITING DEBTOR FROM CONTINUING TO BREACH THE ASSET
PURCHASE AGREEMENT AND (ii) DIRECTING DEBTOR TO COMPLY
WITH ITS OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT**

# TABLE OF AUTHORITIES

## CASES

In re Ben Franklin Hotel Assocs., 186 F.3d 301 (3rd Cir. 1999)..........................................6

Callaway Golf Co. v. Golf Clean, Inc., 915 F. Supp. 1206 (M.D. Fla. 1995) ......................8

In re Davis, 3 F.3d 113 (5th Cir. 1993)..................................................................................6

Herrman Holdings Ltd. v. Lucent Technologies Inc., 302 F.3d 552 (5th Cir. 2002) ..........5

The Ground Round, Inc., 335 B.R. 253 (1st Cir. B.A.P. 2005)............................................6

Hoover v. Morales, 164 F.3d 221 (5th Cir. 1998) ................................................................4

Landrum v. Devenport, 616 S.W.2d 359 (Tex. Civ. App. 1981) .........................................4

Madariaga v. Morris, 639 S.W.2d 709 (Tex. App. 1982)..................................................6, 7

Park v. Swartz, 222 S.W. 156 (Tex. 1920) ...........................................................................4

Productos Carnic, S.A. v. Central Am. Beef & Seafood Trading Co., 621 F.2d
    683 (5th Cir. 1980).....................................................................................................4, 7

Qantum Commc'n Corp. v. Star Broad., Inc., 473 F. Supp. 2d 1249 (S.D. Fla.
    2007) ..........................................................................................................................6, 7

Seattle-First Nat'l Bank v. Manges, 900 F.2d 795 (5th Cir. 1990)..............................4, 7, 8

Smith v. Tarrant County Coll. Dist., 670 F.Supp.2d 534 (N.D. Tex. 2009)......................11

In re Timbers of Inwood Forest Assocs., Ltd., 808 F.2d 363 (5th Cir. 1987) ...................10

Triple-A Baseball Club Assocs. v. Northeastern Baseball, Inc., 832 F.2d 214 (1st
    Cir. 1987).....................................................................................................................6, 7

In re Venturlink Holdings, Inc., 299 B.R. 420 (Bankr. N.D. Tex. 2003) ..........................10

## STATUTES

11 U.S.C. § 105(a) ...............................................................................................................1, 3

28 U.S.C. § 157 ........................................................................................................................2

28 U.S.C. § 1334 ......................................................................................................................2

28 U.S.C. § 1408 ......................................................................................................................3

28 U.S.C. § 1409 ......................................................................................................................3

28 U.S.C. § 2201(a) ..................................................................................................................1

## RULES

Fed. R. Civ. P. 65 ........................................................................................................1, 3, 10, 11

Fed. R. Bankr. P. 7065 ................................................................................................1, 3, 10, 11

## TREATISES

13 James Wm. Moore et al., Moore's Federal Practice ¶¶ 65.30 and 65.36[1] (3d
    ed. 1997) ............................................................................................................................11

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 2

JURISDICTION ............................................................................................................................... 2

RELIEF REQUESTED..................................................................................................................... 3

ARGUMENT .................................................................................................................................... 3

   I. THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER PROHIBITING THE DEBTOR FROM CONTINUING TO BREACH THE APA AND DIRECTING THE DEBTOR TO COMPLY WITH ALL ITS OBLIGATIONS UNDER THE APA ................................................................................... 3

      A.   Plaintiff Satisfies the Traditional Test for a Preliminary Injunction............................... 3

          1. Plaintiff Has a Strong Likelihood of Success on the Merits .......................................... 4

          2. Plaintiff Will Be Irreparably Harmed if the Requested Relief Is Not Granted............... 6

          3. The Debtor Will Suffer No Cognizable Harm if the Requested Relief Is Granted ........ 8

          4. The Requested Relief Does Not Disserve the Public Interest...................................... 10

      B.   Plaintiff Is Entitled to a Temporary Restraining Order ................................................ 10

CONCLUSION............................................................................................................................... 12

Upon the Verified Complaint dated July 12, 2010 filed contemporaneously herewith (the "Verified Complaint"),[1] Rangers Baseball Express LLC ("RBE" or "Plaintiff"), respectfully moves this Court pursuant to 28 U.S.C. § 2201(a) and 11 U.S. C. § 105(a) and Federal Rule of Civil Procedure 65(a) and (b) (the "Federal Rules") and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for a preliminary injunction and temporary restraining order against Defendant Texas Rangers Baseball Partners ("TRBP," or the "Debtor") that (A) prohibits the continuing breach of the Asset Purchase Agreement between TRBP and RBE dated as of May 23, 2010 (the "APA") by (i) the Debtor or its Affiliates soliciting or negotiating with prospective bidders other than Plaintiff regarding the acquisition of the Purchased Assets in contravention of section 7.16 of the APA, (ii) the Debtor failing to use commercially reasonable efforts to take all actions necessary or appropriate to consummate the transactions contemplated by the APA as required by section 7.5 of the APA and (iii) the Debtor failing to file only pleadings that are consistent, and oppose any filing that is inconsistent, with the terms of the APA and provide Plaintiff with an opportunity to review and comment on any proposed filings in this Bankruptcy Case as required by section 7.22 of the APA; and (B) directs the Debtor to comply with its ongoing obligations under the APA, including those set forth in sections 7.5, 7.16 and 7.22 of the APA. In support of the relief requested by this motion (the "Emergency Motion"), Plaintiff represents to the Court as follows:

## PRELIMINARY STATEMENT

RBE seeks a Temporary Restraining Order ("TRO") and a Preliminary Injunction to direct compliance with the APA. The Emergency Motion is necessary because the Chief

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning attributed to them in the Verified Complaint.

Restructuring Officer (the "CRO") of the Rangers Equity Owners,[2] without authority or basis, has improperly caused the Debtor to breach the APA and abandon the bidding procedures, threatening a lengthy and damaging bankruptcy. The CRO was appointed and provided limited authority to vote on the Plan on behalf of the Rangers Equity Owners. He has now unilaterally expanded his authority, and is soliciting and negotiating new bids (and announcing his every plan to the press). The CRO has stated his intent to keep the Debtor in bankruptcy literally for months longer, notwithstanding this Court's recognition that a prompt emergence is needed. In support of his plan, the CRO caused the Debtor to withdraw its motion to approve the bidding procedures, which had been agreed to by the parties and which the CRO himself had approved.

The CRO had no authority to take such action and has no basis for upsetting the Debtor's business judgment. The Debtor's assets were fully marketed for almost a year, and RBE made the best offer. The CRO's intention to delay will badly harm the Debtor, as the financing for RBE's bid will expire on August 12 and the Debtor is bleeding money.

The requested relief, on an interim basis and pending a preliminary injunction hearing, merely requires that the Debtor comply with its obligations under the APA and provides the best avenue for putting this case back on track.

## STATEMENT OF FACTS

The relevant facts are set forth in the Verified Complaint.

## JURISDICTION

This Court has jurisdiction over the Emergency Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicate

---

[2] Rangers Equity Holdings, L.P., a Delaware limited partnership, holds a 99% partnership interest in the Debtor and Rangers Equity Holdings GP, LLC (with Rangers Equity LP, the "Rangers Equity Owners"), a Texas limited liability company, holds a 1% partnership interest in the Debtor.

for the Emergency Motion is section 105(a) of the Bankruptcy Code.  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

By this Emergency Motion and the Verified Complaint, RBE respectfully requests that the Court enter a preliminary injunction and a temporary restraining order against the Debtor in the form attached hereto at Exhibit A.  The requested preliminary injunction and temporary restraining order that would (A) prohibit the continuing breach of the APA by (i) the Debtor or its Affiliates soliciting or negotiating with prospective bidders other than Plaintiff regarding the acquisition of the Purchased Assets in contravention of section 7.16 of the APA, (ii) the Debtor failing to use commercially reasonable efforts to take all actions necessary or appropriate to consummate the transactions contemplated by the APA as required by section 7.5 of the APA and (iii) the Debtor failing to file only pleadings that are consistent, and oppose any filing that is inconsistent, with the terms of the APA and provide Plaintiff with an opportunity to review and comment on any proposed filings in this Bankruptcy Case as required by section 7.22 of the APA; and (B) direct the Debtor to comply with its ongoing obligations under the APA, including those set forth in sections 7.5, 7.16 and 7.22 of the APA.

## ARGUMENT

**I.  THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER PROHIBITING THE DEBTOR FROM CONTINUING TO BREACH THE APA AND DIRECTING THE DEBTOR TO COMPLY WITH ALL ITS OBLIGATIONS UNDER THE APA**

  **A.  Plaintiff Satisfies the Traditional Test for a Preliminary Injunction**

In accordance with Bankruptcy Rule 7065 and Federal Rule 65, this Court has broad power under section 105(a) of the Bankruptcy Code to issue injunctions to carry out its mandate under chapter 11.  See 11 U.S.C. § 105(a) (stating that the bankruptcy court may "issue any

order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]"). An injunction under section 105 is predicated on the standard for granting injunctions generally: (1) the likelihood of success on the merits; (2) the threat of irreparable injury to the movant, including creditors, absent injunction; (3) the likely injury to opposing parties; and (4) the public interest. See, e.g., Hoover v. Morales, 164 F.3d 221, 224 (5th Cir. 1998); Seattle-First Nat'l Bank v. Manges, 900 F.2d 795, 799 (5th Cir. 1990).

### 1.   Plaintiff Has a Strong Likelihood of Success on the Merits

There is no reasonable dispute that RBE can demonstrate a substantial likelihood of success on the merits of its claims as set forth in the Verified Complaint.[3] To prevail on the relevant claims, Plaintiff must establish that (1) a valid agreement exists; (2) Plaintiff performed under the Agreement; (3) the Debtor breached the agreement; and (4) Plaintiff has been injured as a result of the breach. Landrum v. Devenport, 616 S.W.2d 359, 361 (Tex. Civ. App. 1981).

The validity of the APA, which is attached at Exhibit C to the Disclosure Statement approved by this Court, and the Plaintiff's compliance therewith have not been disputed. As set forth in the Verified Complaint, the Debtor has breached, or the CRO has caused the Debtor to breach, a number of pre-closing obligations under the APA.

First, the Debtor and its Affiliates are precluded from soliciting or negotiating with prospective bidders other than Plaintiff regarding the acquisition of the Purchased Assets pursuant to section 7.16 of the APA. The Debtor and the CRO have breached this provision of the APA by soliciting and negotiating with prospective bidders other than RBE. See Verified Complaint at ¶¶ 59-65; see also Park v. Swartz, 222 S.W. 156 (Tex. 1920) (owner breached

---

[3] The Fifth Circuit employs a sliding scale when analyzing the degree of "success on the merits" a movant must demonstrate to justify injunctive relief. Where the other factors weigh in favor of an injunction, as they do here, a showing of some likelihood of success on the merits is enough to justify temporary injunctive relief. Productos Carnic, S.A. v. Central American Beef and Seafood Trading Co., 621 F.2d 683, 686 (5th Cir. 1980). This sliding scale notwithstanding, RBE also satisfies the higher burden.

exclusivity provision in contract by selling property to a third party after granting broker exclusive right to sell his property).

Second, the Debtor is required to use commercially reasonable efforts to take all actions necessary or appropriate to consummate the transactions contemplated by the APA pursuant to section 7.5 of the APA.  The Debtor has breached this provision of the APA by, inter alia, withdrawing the Bidding Procedures Motion and generally failing to pursue confirmation of the Plan on an expedited basis.  See Verified Complaint at ¶¶ 55-58, 66.  These efforts (or more properly lack of efforts) by the Debtor are inconsistent with its obligation under section 7.5 of the APA to work in good faith to consummate the transaction with RBE and to cause its Affiliates to do the same.  See Herrman Holdings Ltd. v. Lucent Technologies Inc., 302 F.3d 552, 558-61 (5th Cir. 2002) (reversing dismissal of breach of contract claim where defendant failed to timely consummate a transaction contemplated by an agreement containing best efforts provision virtually identical to section 7.5 of the APA).

Third, the Debtor is required to file only pleadings that are consistent, and oppose any filing that is materially inconsistent, with the terms of the APA and provide Plaintiff with an opportunity to review and comment on any proposed filings in this Bankruptcy Case pursuant to section 7.22 of the APA.  The Debtor breached this provision of the APA by filing the Notice of Withdrawal of the Bidding Procedures Motion without prior notice to RBE, which also deprived RBE of an opportunity to review and comment on the filing.  See Verified Complaint at ¶¶ 56-59.  Furthermore, by withdrawing the Bidding Procedures which are necessary to consummate the APA, the Debtor filed a pleading that was materially inconsistent with the terms of the APA

An equitable remedy such as the requested relief here is not a "claim" under section 101(5)(B) of the Bankruptcy Code, and thereby dischargeable in bankruptcy, if monetary

damages are not a viable alternative to the equitable relief sought. See, e.g., The Ground Round, Inc., 335 B.R. 253 (1st Cir. B.A.P. 2005) (an equitable remedy will not constitute a claim dischargeable in bankruptcy where monetary damages is not a viable alternative to the equitable remedy sought); In re Ben Franklin Hotel Assocs., 186 F.3d 301, 307 (3rd Cir. 1999) (monetary damages are not considered an adequate remedy for a unique business opportunity and proposed equitable remedy not a dischargeable claim); cf. In re Davis, 3 F.3d 113, 117 (5th Cir. 1993) (recognizing that equitable claims without a money damages alternative are not dischargeable claims).

Here, the acquisition of a major league baseball franchise such as the Texas Rangers is a unique, one-of-a-kind asset, and monetary damages are not a viable alternative to the equitable relief sought herein. Indeed, the Debtor conceded as much from the outset when it acknowledged and agreed that a breach of the APA "would cause irreparable damage to the other party and such other party will not have an adequate remedy at Law." See, e.g., APA at § 10.9; see also Triple-A Baseball Club Assocs. v. Northeastern Baseball, Inc., 832 F.2d 214, 223-25 (1st Cir. 1987) (minor league franchise was unique and of special interest to the buyer and money damages for breach of agreement to transfer franchise would be inadequate); Qantum Commc'n Corp. v. Star Broad., Inc., 473 F. Supp. 2d 1249, 1267 (S.D. Fla. 2007 ) (granting specific performance for breach of non-solicitation provision of APA for radio station where agreement stated that no adequate remedy existed at law and radio station assets were unique); Madariaga v. Morris, 639 S.W.2d 709, 711-12 (Tex. App. 1982). Accordingly, the requested relief here does not constitute a dischargeable "claim."

### 2. Plaintiff Will Be Irreparably Harmed if the Requested Relief Is Not Granted

The Debtor and its Affiliates' solicitation and negotiation with prospective bidder other than RBE jeopardizes consummation of the transactions contemplated by the APA and represents an

immediate and irreparable harm to RBE.  Irreparable harm inheres in the risk that a remedy at law will be inadequate to compensate RBE for the Debtor's breach.  See Seattle-First Nat'l Bank, 900 F.2d at 799 (granting preliminary injunction upon finding that lack of adequate remedy at law established the existence of a substantial threat of irreparable harm); Productos Carnic, 621 F.2d at 686 (same).

      The Debtor has already acknowledged that a breach of the APA would cause irreparable damage to RBE.  APA at § 10.9.  In any case, the risk of an inadequate remedy at law in this case is a function of the unquestionably unique nature of the Purchased Assets.  A major league baseball team is a unique, one-of-a-kind asset.  Accordingly, the consideration that Plaintiff contracted for and now seeks to protect—the exclusive opportunity to negotiate the sale of the Texas Rangers franchise—is unique and special, and RBE would have no adequate remedy at law if it is lost.  The Debtor has acknowledged as much in the APA, which provides that a breach of the APA "would cause irreparable damage to the other party and such other party will not have an adequate remedy at Law."  See APA at § 10.9.  Likewise, courts have also recognized that sports franchises are unique and money damages for breach of an agreement to transfer a franchise are inherently inadequate.  See, e.g., Triple-A Baseball Club Assocs., 832 F.2d at 223-25 (finding minor league franchise was unique and of special interest to the buyer and that money damages for breach of agreement to transfer franchise would be inadequate); see also Qantum Commc'n Corp., 473 F. Supp. 2d at 1267 (granting specific performance for breach of non-solicitation provision of APA for radio station where agreement stated that no adequate remedy existed at law and radio station assets were unique); Madariaga v. Morris, 639 S.W.2d at 711-12 (finding hot sauce business had particular value and character that could not be found elsewhere and granting equitable remedy for breach of option to buy).

### 3. The Debtor Will Suffer No Cognizable Harm if the Requested Relief Is Granted

The Debtor will suffer no cognizable harm if the Court grants the requested preliminary relief. As a threshold matter, the Debtor effectively consented to the requested relief when it acknowledged that a breach of the APA would cause irreparable damages and waived any defense in respect to an action for specific performance. APA at § 10.9.

In any event, the requested relief will not cause the Debtor harm as it merely enforces the APA. An injunction will not cause harm to a party such as the Debtor where, as here, it merely prevents him from doing what he is not entitled to do and requires him to do that which he has already agreed. See Seattle-First Nat'l Bank, 900 F.2d at 799 (affirming injunction and finding that no harm would enure to defendants where "the injunction would simply force them to do what they had already agreed to do"); Callaway Golf Co. v. Golf Clean, Inc., 915 F. Supp. 1206, 1215 (M.D. Fla. 1995) (noting that defendant would not suffer any legitimate harm from being prevented from doing something he was not legally entitled to do). Here, the proposed relief merely requires that the Debtor stop breaching the APA and comply with its contractual obligations. Moreover, the relief is narrowly tailored to preserve the benefit of the parties' bargain in the APA.

In contrast, the continued delay and the CRO's conduct in inducing breaches of the APA affirmatively harms the Debtor. The CRO has embarked on a campaign to block emergence and keep the Debtor in bankruptcy without any legitimate basis. In addition to repudiating the parties' agreement with respect to the proposed bidding procedures, the CRO has informed Plaintiff that he intends to, among other things, (i) reject the currently proposed plan of reorganization; (ii) attempt to force a sale under section 363(b) of the Bankruptcy Code with respect to the Purchased Assets; (iii) continue to solicit bids from other prospective purchasers; and (iv) propose a different plan of reorganization sometime *within the next few months*. The CRO has no authority to take control of this bankruptcy case, and his proposed actions will not benefit the estate.

The Court approved the appointment of the CRO for the limited purpose of casting a vote on behalf of the Rangers Equity Owners and to provide analysis related to such vote, not to put the CRO in charge of the Bankruptcy Case.  The CRO is not authorized to solicit or negotiate with any prospective bidders, and does not speak on behalf of the Debtor.

Not only is the CRO acting without authority, he is acting without basis.  The Debtor has already engaged in a vigorous marketing and auction process to identify the best offer to purchase the estate's assets.  It is undisputed that this process involved negotiations with multiple bidders over the course of a year, with the Debtor advised by top-tier financial advisors, and ultimately resulted in the selection of RBE's bid as the best offer.  Absolutely no credible information has been brought to light—by the CRO or otherwise—to suggest some better offer is now available.  However, RBE has agreed to implement bidding procedures to allow any belated bidder an opportunity to come forward and submit a better offer.  Such bidding procedures provide that to the extent there are better offers, there will be a full auction on July 22.  Any speculation that there will be some bidders that did not bid during the past year, and cannot bid within the proposed time period, is not credible and provides no basis for the Debtor to walk away from the best and most qualified offer as put forward by RBE.

By delaying, the CRO is causing further harm to the Debtor by placing the best offer at risk.  REB has a present and existing right to purchase the Debtor's assets under the APA, unless outbid, and is fully financed and ready to close the transaction.  However, RBE's financing expires in early August, and further delay jeopardizes the availability of RBE's offer.  The continued delay also drains money from the estate, and with each week in bankruptcy the Debtor requires additional money to fund the operation of the team.  As the Court has recognized, the estate here has every incentive to avoid a long and costly bankruptcy proceeding and to have the

Debtor quickly emerge from chapter 11.

### 4. The Requested Relief Does Not Disserve the Public Interest

Enjoining Debtor clearly protects not only RBE but also the public interest in general. The Bankruptcy Code provides a wide array of tools to maximize value and promote reorganization. However, there is nothing in the Bankruptcy Code that condones repudiation of contractual obligations or miring the Court and interested parties in a period of limbo. This Court is vested with broad discretion and management duties to further the public interests and protect the all parties to the bankruptcy process. In re Timbers of Inwood Forest Assocs., Ltd., 808 F.2d 363, 373 (5th Cir. 1987) ("Early and ongoing judicial management of Chapter 11 cases is essential if the Chapter 11 process is to survive and the goals of reorganizability on the one hand, and creditor protection, on the other, are to be achieved."). It is well recognized that the protection of contract rights is within the public interest, and that applies with equal strength in bankruptcy proceedings. In re Venturlink Holdings, Inc., 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003) ("The bankruptcy process must both be fair and appear fair.").

The interests of creditors of the Debtor's estate will also be best served by the requested relief. By enforcing the APA, the Court will best facilitate an expeditious resolution of this Bankruptcy Case and secure the best bid for the estate, in which creditors will be paid in full. Furthermore, the requested relief is narrowly tailored so as not to interfere with an orderly auction of the Purchased Assets. Indeed, RBE has agreed with the Debtor to the implementation of certain bidding procedures that will put this case back on track.

### B. Plaintiff Is Entitled to a Temporary Restraining Order

The facts presented here also satisfy the requirements under Rule 65 of the Federal Rules of Civil Procedure (made applicable hereto by Rule 7065 of the Federal Rules of Bankruptcy Procedure) for a temporary restraining order pending hearing on Plaintiff's request for a

preliminary injunction. A temporary restraining order is properly granted to preserve the status quo and prevent immediate and irreparable injury pending a hearing upon a motion for a preliminary injunction. See 13 James Wm. Moore et al., Moore's Federal Practice ¶¶ 65.30 and 65.36[1] (3d ed. 1997).

A temporary restraining order should be granted if the elements for a preliminary injunction have been satisfied and the court determines that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. See Fed. R. Bankr. P. 7065; Fed. R. Civ. P. 65(b); Smith v. Tarrant County Coll. Dist., 670 F.Supp.2d 534, 536-37 (N.D. Tex. 2009).

The facts here warrant the imposition of a temporary restraining order because as set forth in the Verified Complaint, RBE immediately and irreparably will be harmed by the Debtor's continued violation of the APA prior to the date of hearing on the preliminary injunctive relief requested herein.

Counsel for RBE has given notice of the Emergency Motion and the Verified Complaint to Debtor's counsel as described in the Certificate of Conference in the Motion for Expedited Hearing on the Emergency Motion, filed contemporaneously herewith.

## **CONCLUSION**

For the foregoing reasons, the requested preliminary injunctive relief should be granted.

Dated: Fort Worth, Texas
July 12, 2010

By    /s/ Craig Averch
Thomas E Lauria
State Bar No. 11998025
Craig H. Averch
State Bar No. 01451020
**WHITE & CASE LLP**
Wachovia Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131

Mary Kay Braza
**FOLEY & LARDNER, LLP**
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

Michael J. Small
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, Illinois 60610

Henry W. Simon, Jr.
State Bar No. 18394000
Robert A. Simon
State Bar No. 18390000
**BARLOW GARSEK & SIMON, LLP**
3815 Lisbon Street
Fort Worth, Texas 76107

ATTORNEYS FOR RANGERS BASEBALL EXPRESS LLC